```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

RICHARD WRIGHT,

                Plaintiff,        07-CV-0030-E(Sr)

     v.                          **DECISION**
                                               **and ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security

                Defendant.
_____

## **INTRODUCTION**

Plaintiff Richard Wright ("Plaintiff") brings this action pursuant to the Social Security Act § 216(i) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits.[1] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Nancy Lee Gregg denying his application for benefits was not supported by substantial evidence contained in the record and was contrary to applicable legal standards.

Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)("Rule 12(c)"), seeking reversal of the Commissioner's ruling or, in the alternative, remand of the matter for a new hearing. The Commissioner cross-moves for judgment on the pleadings pursuant to Rule 12(c), on the grounds

---

[1] This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated October 2, 2007.

that ALJ Gregg's decision was supported by substantial evidence contained in the record and was based on the correct application of appropriate legal standards. For the reasons set forth below, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's motion for judgment on the pleadings.

### BACKGROUND

On April 17, 2002, Plaintiff, at that time 55 years-old, filed an application for Disability Insurance Benefits (Tr. at 92). Plaintiff claimed an inability to work since January 9, 2002, due to depression, schizophrenia, paranoia, a history of childhood polio resulting in hip replacement, residuals status post rotator cuff surgery, and a history of nervous breakdown (Tr. at 125). Plaintiff's application was denied initially on August 13, 2002 (Tr. at 32), and he then filed a timely request for a hearing before an ALJ (Tr. at 37-38). Plaintiff appeared, with counsel, in an initial administrative hearing before ALJ Nancy L. Gregg on October 8, 2004 in Buffalo, NY (Tr. at 497). Plaintiff then appeared at a supplemental hearing before ALJ Gregg on January 5, 2005 (Tr. at 530).

In a thorough, well-reasoned decision dated May 26, 2006, ALJ Gregg found that although Plaintiff's hip impairment,

recurrent depression impairment, and atypical psychosis were severe, the Plaintiff was not disabled within the meaning of the Social Security Act ("the Act")(Tr. at 18-23). Plaintiff appealed to the Social Security Appeals Council ("Appeals Council") on May 26, 2006 (Tr. at 7).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the ALJ's decision on November 14, 2006 (Tr. at 7-9). On January 19, 2007, Plaintiff filed this action.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits

case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that her decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle her to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**II. The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

In finding that Plaintiff was not disabled within the meaning of the Social Security Act ("The Act"), the ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis for evaluating applications for disability

benefits. See 20 C.F.R. § 404.1520.[2] Under Step one of that process, the ALJ found that Plaintiff had indeed engaged in substantial gainful activity since his alleged disability onset date of January 9, 2002 (Tr. at 16).

At Steps two and three, the ALJ found that Plaintiff had a hip impairment, and ("giving the claimant the benefit of any doubt") a major depression and atypical psychosis impairments, which were severe within the meaning of the Regulations but were not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4., Listings 1.00(B)(2)(b) (Musculoskeletal Disorders) and 12.00 (Mental Disorders) (Tr. at 19-23). Further, at Step four, the ALJ concluded that Plaintiff retained the residual functional capacity to perform his past relevant work as a Director of Safety and Health, and therefore was not disabled within the meaning of the Act (Tr. at 27-29). 20 C.F.R. § 404.1520(f).

Finally, at Step five of the disability evaluation process, the ALJ found that the Plaintiff had the residual functional

---

[2]Five-step analysis includes: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, third inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in regulations Appendix 1, and if so, claimant will be considered disabled without considering vocational factors; (4) if claimant does not have listed impairment, fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work, ALJ determines whether claimant could perform other work. See id.

capacity to perform a significant, though not full, range of medium work (Tr. at 29).  The ALJ relied on the testimony of a vocational expert (hereafter "VE") to say that the Plaintiff could perform the duties of a Registration/Intake Clerk, a job which exists in numbers of 610 regionally, and 91,400 nationally (Tr. at 29).  The ALJ found this to be a significant number of jobs available to the plaintiff, in satisfaction of step five of the disability evaluation (Tr. at 29-30).

Based on the entire record, and particularly the medical evidence in the record, I find that the ALJ properly concluded that Plaintiff was not disabled.

    A.   <u>The Plaintiff engaged in substantial gainful activity during the period for which he claims disability.</u>

Under step one of the disability determination process, "[i]f you are able to engage in substantial gainful activity, we will find that you are not disabled." 20 C.F.R. § 404.1571.  The Plaintiff claims disability beginning in January 2002 (Tr. at 125).  And yet, according to his social security earnings report, the Plaintiff earned $9,071.25 in January 2002, $9,027.00 in February 2002, $10,870.74 in March 2002, was paid and a total of $56,410.07 for the whole year of 2002 (Tr. at 123, 110).  At the close of 2002, the Plaintiff retired (Tr. at 18).

The time period for which the Plaintiff claims disability encompasses the year of 2002, for which the Plaintiff earned

more than fifty-six thousand dollars.  Under the statutory provisions, this level of earnings denotes Plaintiff's participation in substantial gainful activity.  See 20 C.F.R. § 404.1574.  The ALJ's calculations of Plaintiff's earnings and determination that Plaintiff was engaged in substantial gainful activity during the claimed disability period were correct under the legal rubric of the Act. 20 C.F.R. §§ 404.1574 and 404.1576.

Under the Act, a person cannot be substantially gainfully employed and disabled.  It is clear here that Plaintiff does not meet the threshold requirements of Step one of the disability evaluation, at least for the initial portion of the time for which he seeks a disability determination.  Therefore, the Plaintiff fails to meet his initial burden under Step one of the disability evaluation because his earnings record is indicative of substantial gainful activity.

    B.    <u>There is substantial medical evidence in the record to support the ALJ's finding that Plaintiff is not disabled.</u>

The Act requires this court to determine whether the ALJ's decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g). The ALJ, after following the five step analysis as required by the statute,  found that the Plaintiff was not disabled within the meaning of the Act.  The ALJ concluded that despite his limitations, the Plaintiff retained the ability to perform his past relevant work as a Director of Safety and

Health and also retained the residual functional capacity to perform the duties of a significant range of medium exertional work which exists in sufficiently significant numbers in the regional and national economies (Tr. at 27-29). The ALJ's determination regarding the Plaintiff's ability to perform his past relevant work and other work is amply and substantially supported by the evidence in the record.

The ALJ's decision lays out an extensive and accurate analysis of the Plaintiff's medical records (Tr. at 19-23). The record reveals that the Plaintiff had received treatment from a number of sources for various physical and mental ailments. While many of these impairment were indeed severe, as the ALJ's decision reflects, there is no evidence to substantiate the Plaintiff's claim of disability under the requirements of the Act. The Plaintiff's medical records from both treating and consultative sources reveal that despite several severe impairments, the Plaintiff enjoyed a level of mental and physical health that establishes a residual functional capacity in excess of that required for a finding of disability.

Dr. Michael P. Santa Maria, PhD. examined the plaintiff over a two day period (November 10 and 12, 2004) at the request of Plaintiff's treating physician Dr. Frank R. Laurri (Tr. at 466-472). The extensive and detailed examination revealed that in terms of psychiatric health, Plaintiff's "mood symptoms

appear to have improved significantly since late 1999," despite his history of major depressive disorder (Tr. at 471).

In terms of cognitive function, Dr. Santa Maria characterized the Plaintiff's performance in the formal evaluation "unusual" (Tr. at 471). Plaintiff claimed memory and concentration dysfunction which caused him to perform poorly in the evaluation, prevented him from properly maintaining his own home, caused him to forget where the dishes go in his own kitchen, and prevented him from even reading a newspaper article (Tr. at 471). Dr. Santa Maria noted the oddity of such claims when Plaintiff's clinical presentation was not consistent with the Plaintiff's claims of dysfunction (he recalled names of office persons, and past visits without problem), he claims to play golf four times a week, and his wife states that he will sit in the car and read a newspaper for "lengthy periods of time....while she is shopping (Tr. at 471)." Dr. Santa Maria noted that Plaintiff's performance during the evaluation was "particularly of concern when considered in combination with the fact...that he is applying for Social Security Disability and the basis for such originally was depression...which is now largely resolved (Tr. at 471)."

Dr. Alan F. Dubro, Ph.D., examined the Plaintiff in July of 2002 (Tr. at 339-343). His report reveals that the Plaintiff was functioning in a largely normal manner both physically and

mentally. While there were some mild symptomology of depression, the Plaintiff's diagnosed "major depressive disorder" was found to be "in partial remission" (Tr. at 342). His recommendation was that Plaintiff continue to receive "outpatient psychiatric treatment" (Tr. at 342).

Dr. John Repicci, M.D. (an orthopedic surgeon), treated the Plaintiff for his hip impairment (Tr. at 19, 301-307, 331-332). His records reveal that following hip replacement surgery on the Plaintiff in November 2000, the Plaintiff recovered and regained the ability to work full time by October 2001 (Tr. at 304). He was "comfortable and ambulatory without pain (Tr. at 19)." Plaintiff even asked Dr. about playing racquetball and other "expected activity" once surgery was complete (Tr. at 303).

Dr. Samuel Balderman, M.D., performed a consultative medical examination of the Plaintiff on July 18, 2002 (Tr. at 334-337). He found Plaintiff able to walk three blocks, sit without limitation, stand for 15 minutes, climb stair and lift and carry up to 40 pounds (Tr. at 334). He said that the Plaintiff was able to "bathe and dress himself," and that he "enjoys television, radio, going out and playing golf (Tr. at 334)." He also found that the Plaintiff appeared in "no acute distress," has a "slight limp," his "stance is normal," and he needed "no help getting on and off the examination table (Tr. at 336)." He also notes full range of motion in most of the

Plaintiff's joints with "mild limitation[s]" in right hip and right shoulder due to replacement and repair procedures (Tr. at 336).

The opinions of these treating and consultative sources along with the rest of the medical evidence in the record reveal that despite some limitations due to physical and mental impairments, the Plaintiff retained a high level of functionality. The ALJ properly concluded based on the evidentiary record in its entirety, that the claimant retained a residual functional capacity to perform his past relevant work, and other work which exists in significant numbers in the regional and national economies and, therefore, was not disabled within the meaning of the Act.

C. The ALJ properly explained his reasons for disregarding the treating physician's opinions.

The Plaintiff contends that the ALJ failed to give sufficient weight to the opinions of plaintiff's treating physician, Dr. Hashim. The Second Circuit authority grants controlling weight to the opinion of a treating physician. Clark v. Commissioner of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Indeed, courts in this circuit require that an ALJ provide explanations, or "good reasons," when choosing to discount the opinion of a treating physician. See Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998); see Vales v. Apfel, No. 99-CV-3298 (JG), 2000 WL 863462, at *5, 2000 U.S. Dist. LEXIS

8209, at *18, (E.D.N.Y. June 13, 2000). An ALJ must consider the following factors in determining whether a treating physician's opinion is to be given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

Dr. Hashim opined in his affidavit that the claimant "is totally and permanently disabled from any job" (Tr. at 493). Dr. Hashim noted the Plaintiff's impairments and concluded that he did not believe that the Plaintiff was capable of performing any work (Tr. at 493). While normally, such an opinion should be accorded substantial weight, ALJ Gregg decided that it should be disregarded.

Initially, the Social Security regulations reserve the decision as to a claimant's disability solely for the Commissioner. 20 C.F.R. § 404.1527(e). Therefore, Dr. Hashim's statement that the Plaintiff is disabled is not conclusive to the disability inquiry. That determination is left exclusively to the ALJ based on consideration of the total evidence in the record.

The ALJ, in discounting Dr. Hashim's opinion, properly explained her reasons for doing so. The weight of medical evidence in this record reveals that while the Plaintiff's impairments are severe, they do not rise to the level of disabling the Plaintiff. As the ALJ thoroughly explained, the medical records as developed by the plaintiff's many treating and consultative physicians, the plaintiff's own admissions and activities of daily living, and even Dr. Hashim's own treatment notes do not support a finding of disability. There is substantial evidence in the record to support the ALJ's decision to disregard the statement of the Plaintiff's treating physician, Dr. Hashim, that the Plaintiff was disabled.

The record reveals that the ALJ properly evaluated and discounted the opinion of Dr. Hashim. The ALJ also adequately explained her decision as required, which explanation was based on substantial evidence in the record.

D.  <u>The ALJ gave proper weight and consideration to the medications that the Plaintiff was taking in making his decision.</u>

The Plaintiff argues that the ALJ failed to give proper consideration to the type, dosage, effectiveness and side effects of the medications prescribed to the Plaintiff in making her determination. However, the ALJ's decision reveals she was aware of the medications being taken by Plaintiff, and that they were taken into account in rendering her decision (Tr. at 23).

The ALJ considered the medications and their side effects, and found that the Plaintiff's complaints were not entirely credible. In doing so, the record reveals that ALJ considered the nature and extent of the medication being taken by the plaintiff in determining his ability to perform jobs in the national economy as described by the VE.

  E. <u>The ALJ properly discounted the subjective testimony of the Plaintiff.</u>

Plaintiff argues that the ALJ improperly discredited the plaintiff's credibility. The statements of an individual claiming disability must be carefully considered to the extent that they are consistent with the objective medical evidence in the record. Social Security Ruling 96-7p. The ALJ properly found that the objective medical evidence in the record did not support the level of difficulty and disability claimed by the Plaintiff (Tr. at 23-27).

Furthermore, the ALJ properly found that much of the Plaintiff's own testimony contradicted his claims regarding disability. Evidence regarding his lifestyle, and his own admissions as to the true extent of his impairments support the ALJ's conclusion that his subjective claims of disability were not fully credible. That finding is supported in the opinion of Dr. Santa Maria as a result of his evaluation of the plaintiff. The Plaintiff's complaints were inconsistent with the reality of his lifestyle.

The ALJ also properly construed the testimony of the lay witness Rich Torcasio. While Mr. Torcasio did state that the Plaintiff exhibited some problems playing golf according to the rules, this in no way leads to a conclusion that the plaintiff is disabled. In fact, as the ALJ made clear, the fact that he was regularly able to meet the physical and mental demands of regular golf outings denotes a level of functionality inconsistent with a finding of disability.

The ALJ properly evaluated Plaintiff's testimony in light of the evidence in the record, and her decision discrediting Plaintiff's subjective testimony was supported by substantial evidence in the record.

## CONCLUSION

For the reasons set forth above, I conclude that the ALJ's decision was supported by substantial evidence in the record and, therefore, grant Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         January 8, 2008